HAZOURI, J.
Michael Lapp appeals the Final Order, issued by the Construction Industry Licensing Board (Licensing Board) of the State of Florida on behalf of the Department of Business & Professional Regulation, denying his application for a Swimming Pool/Spa Contractor License. He contends that the Final Order is not supported by substantial competent evidence. We agree and reverse with instructions that Lapp be issued a license.
Lapp applied to the State of Florida Department of Business and Professional Regulation for state licensure as a swimming pool/spa contractor. The Licensing Board reviewed Lapp’s application and issued a Notice of Intent to Deny. As grounds for the denial, the Licensing Board found that Lapp lacked the good moral character required by section 489.111(2)(b), Florida Statutes (2002). Lapp sought review of the Notice of Intent to Deny and requested an informal hearing pursuant to section 120.57(2), Florida Statutes (2002). A hearing was held before the Licensing Board on May 9, 2003. The hearing was very brief, it consisted of the Licensing Board asking Lapp a series of questions.
The Licensing Board subsequently issued a Final Order denying Lapp’s application on the basis that Lapp lacked the good moral character required under the statutes. The Final Order indicates that the Licensing Board found that Lapp violated several applicable statutes by: making misstatements of fact on his applica *672 tion; being involved in the unlicensed practice of contracting; and aiding and abetting other contractors in the unlicensed practice of contracting.
A review of the record indicates that the alleged misstatements of fact made on Lapp’s application were insignificant and not intended to mislead the Licensing Board. These technical misstatements do not constitute clear and convincing evidence of a lack of good moral character as required by section 489.111(3)(a)(2).
The Licensing Board’s finding that Lapp engaged in the unlicensed practice of contracting is based on two Notices of Violation that Lapp received by the Palm Beach County Construction Licensing Board. Lapp acknowledged at the hearing that he received these violations. However, he argued that the violations were incurred only because the qualifying agent that he was working under had moved before the jobs were completed. The record reflects that after issuing the Notices of Violation, the Palm Beach County Construction Licensing Board found Lapp to be in substantial compliance with its requirements and determined that no further action would be taken. Lapp testified at the hearing that these incidents were a result of confusion and procedural obstacles. Lapp had previously been involved in the pool maintenance and repair business for several years in Broward County. When Lapp moved to Palm Beach County and attempted to open a business, he was required to obtain state licensure. Lapp was in the process of obtaining this licensure when the violations occurred. There was no evidence that Lapp had ever received notices of violation throughout his eleven-year career in Broward County. We hold that these violations were minor and do not provide clear and convincing evidence of a lack of good moral character.
The Licensing Board argues that there may have been several other incidents of unlicensed contracting during that time. However, there was no evidence presented at the hearing relating to any other incidents; therefore any allegation of additional violations is purely speculation and cannot form a basis for the denial.
With respect to the Licensing Board’s finding that Lapp aided and abetted other contractors in the unlicensed practice of contracting, there is no substantial, competent evidence to find that Lapp violated either section 455.227(l)(j) or section 489.129(l)(d) and (e).
Therefore, we reverse and direct the Licensing Board to issue Lapp a license.
REVERSED.
FARMER, C.J., and GUNTHER, J., concur.